**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beth Herold, | No. CV-20-01133-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Beth Herold's appeal of her denial of social security disability benefits. The appeal is fully briefed (Doc. 18, Doc. 21, Doc. 25), and the Court now rules.

## I.      BACKGROUND

### a.      Factual Overview

Plaintiff was 58 years old at the time of her hearing and has a Doctor of Chiropractic degree. (AR 34, 40). Plaintiff has past relevant work experience as a consultant. (AR 23). Plaintiff suffers from lumbar and cervical degenerative disc disease, asthma, irritable bowel syndrome, gastroesophageal reflux disease, fibromyalgia, depression, and anxiety. (AR 17–18).

On April 25, 2018, Plaintiff filed applications for a period of disability and disability insurance benefits. (AR 13). Plaintiff also filed an application for supplemental security income on May 3, 2018. (AR 13). Plaintiff alleged disability beginning January 29, 2015 due to a combination of physical and mental impairments such as: pain in her back, neck,

wrist, knees, shoulder, and feet, along with chronic fatigue, fibromyalgia fog, temperature issues, migraine headaches, and irritable bowel syndrome with chronic diarrhea. (AR 20, 237).

Plaintiff's claims were denied initially on September 8, 2018, and upon reconsideration on December 20, 2018. (AR 13). An ALJ conducted a hearing on November 5, 2019 and denied Plaintiff's claim on December 03, 2019. (AR 13–24). The SSA Appeals Counsel denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (AR 1).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four,

the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c.    The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (AR 17). At step two, the ALJ concluded that Plaintiff's lumbar and cervical degenerative disc disease and asthma constituted severe impairments. (AR 17). During the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in the regulations. (AR 19). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except, as relevant here, Plaintiff can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (AR 22). Plaintiff can also occasionally balance, stoop, kneel, crouch, crawl, and reach overhead. (AR 22). Lastly, Plaintiff must avoid chemicals, odors, dusts, fumes, gases, and hazards, including moving machinery and unprotected heights. (AR 22). At step four, the ALJ concluded that Plaintiff could perform past relevant work as a

1  consultant because that work "does not require the performance of work-related activities

2  precluded by the claimant's residual functional capacity." (AR 23). Accordingly, the ALJ

3  determined that Plaintiff was not disabled.[1]

4  **II.   LEGAL STANDARD**

5         This Court may not overturn the ALJ's denial of disability benefits absent legal error

6  or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

7  "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept

8  as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

9  (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).

10  "The inquiry here is whether the record, read as a whole, yields such evidence as would

11  allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*,

12  753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of

13  more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and

14  in reaching [her] findings, the ALJ is entitled to draw inferences logically flowing from the

15  evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

16  1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court

17  must resolve conflicts in the evidence, and if the evidence can support either outcome, the

18  court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d

19  1016, 1019 (9th Cir. 1992); *see Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035

20  (9th Cir. 2003) ("If the evidence can support either outcome, the Commissioner's decision

21  must be upheld.").

22         The ALJ is responsible for resolving conflicts in medical testimony, determining

23  credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

24  Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the

25  ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th

26  Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm

27  simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d

28  _____

[1] Because she determined that Plaintiff could perform past relevant work, the ALJ did not
need to analyze the fifth step. (AR 23).

625, 630 (9th Cir. 2007) (quotation omitted). The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

## III.    ANALYSIS

Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's symptom testimony, and (2) rejecting the assessments of Plaintiff's treating physician and finding the state agency physician's assessment persuasive. (Doc. 18). The Court addresses each in turn.

### a.    Symptom Testimony

Plaintiff argues that the ALJ committed material harmful error by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons supported by substantial evidence in the record. (*Id.* at 10). Specifically, Plaintiff argues that the ALJ improperly rejected testimony regarding the severity of the symptoms on the basis that the severity is not consistent with the medical evidence. (*Id.* at 12).

When evaluating the credibility of a claimant's testimony regarding subjective pain, the ALJ must engage in a two-step analysis. First, the ALJ must determine if the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Second, if there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Id.* at 1014–15.

Plaintiff's symptom testimony included statements about her physical and mental limitations. Specifically, Plaintiff testified that her pain is so severe she can only do one outing per day, she sometimes has trouble getting dressed or taking a shower because she does not feel stable and the water causes her pain, and she cannot unload the washing machine and dryer. (AR 45–46). Furthermore, Plaintiff stated she has a hard time bending

over, she cannot read books or magazines because they are difficult to understand, and she cannot put a pot in the oven. (AR 47–48). Regarding her mental well-being, Plaintiff stated she cries all the time, cannot eat, frequently throws up, and has had suicidal thoughts. (AR 51–52). Lastly, Plaintiff testified that she can only walk a quarter of the way around the grocery store, has trouble standing in one spot, sitting for longer than an hour, and has trouble focusing and must re-read more than half the time. (AR 54–55).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms. (AR 20). However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 20).

Plaintiff argues the ALJ committed a "fundamental legal error" by requiring Plaintiff's subjective symptom testimony be "entirely consistent" with medical evidence. (Doc. 18 at 12). The Court, however, does not read the ALJ's language as requiring the Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Rather, the ALJ's statement notes that the record contains conflicting evidence as to the severity of Plaintiff's symptoms. Although Plaintiff is not required to provide medical evidence of the severity of her symptoms, *see Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (explaining that "an adjudicator may not reject a Plaintiff's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"), the ALJ may properly consider objective medical evidence to assess Plaintiff's credibility regarding the intensity and persistence of her symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (pointing to medical evidence as a relevant factor in determining severity of Plaintiff's pain and disabling effects).

The Court finds that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. When determining the credibility of a plaintiff's symptom testimony, an ALJ can consider the following factors, including but not limited

to: the plaintiff's "reputation for truthfulness, inconsistencies either in [plaintiff's] testimony or between [the plaintiff's] testimony and conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the [alleged] symptoms." *Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir. 2002).

After considering the factors above, the ALJ concluded that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence in the record. (AR 20). *See Thomas*, 278 F.3d at 960 (noting that an ALJ cannot reject a plaintiff's symptom testimony solely because the objective medical evidence is inconsistent with the alleged limitations, however, the ALJ may properly reject the testimony "by using ordinary techniques of credibility evaluation" to determine the testimony was not credible (citation omitted)). Substantial evidence supports the ALJ's conclusion. Medical providers consistently noted normal gait, coordination, and strength, and the record indicated improvement with conservative treatment. (AR 352, 594, 602, 609–10, 617–18, 624–25, 647, 687, 703–04, 711–12, 741, 841, 849, 857, 865, 873, 880, 897–98, 905–06, 913–14, 939); *see Bunnell*, 947 F.2d at 346 (noting that when determining a claimant's credibility, the ALJ must consider the "type, dosage, effectiveness, and adverse side-effects" of treatment). Specifically, Plaintiff reported that steroid injections provided 20 percent relief, a SI joint injection provided 100 percent relief after 20 minutes, and lumbar facet and medial branch blocks provided significant relief 20 minutes after the procedure. (AR 598, 658–65, 890–93). Likewise, the medical evidence showed that Plaintiff's asthma was fairly well managed with medication (AR 441, 505), and "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [disability] benefits." *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Along with her "entirely consistent" argument, Plaintiff also argues the ALJ committed legal error by making no "effort to connect the discussion of the medical evidence to a finding that any specific part of the symptom testimony lacked credibility."

(Doc. 18 at 13). *See Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) ("Indeed, this Court has repeatedly rejected ALJ rationale that discussed medical evidence but provided no connection between that discussion and rejection of claimants' symptom testimony." (collecting cases)). The Court disagrees that the ALJ failed to connect the symptom testimony to the medical evidence.

The ALJ explicitly recognized that Plaintiff complained of functional limitations of difficulty "lifting, squatting, standing, bending, reaching, walking, sitting, kneeling, [and] climbing stairs" (AR 20), but noted that contrary to these complaints, Plaintiff consistently exhibited normal gait, coordination, and strength. (AR 21, 352, 594, 602, 609–10, 617–18, 624–25, 647, 687, 703–04, 711–12, 741, 841, 849, 857, 865, 873, 880, 897–98, 905–06, 913–14, 939). Additionally, the ALJ explicitly recognized Plaintiff's complaints of difficulty with "remembering, completing tasks, concentrating, understanding, [and] following instructions" (AR 20), but noted that contrary to these complaints Plaintiff had multiple mental examinations that came back normal. (AR 386, 388–89, 391–94, 402–03, 555–60, 563, 585, 587, 589–90, 827). Accordingly, the ALJ properly rejected Plaintiff's symptom testimony by providing specific, clear, and convincing reasons for determining that the testimony was not credible.

### b.   **Medical Assessment**

Plaintiff next argues that the ALJ, in finding Plaintiff's mental impairments to be non-severe, committed material harmful error by rejecting the assessments of Plaintiff's treating physician, Dr. Parker. (Doc. 18 at 15).

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v.*

1    *Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D.

2    Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical*

3    *Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new

4    regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c,

5    416.920c. The new regulations provide that the ALJ "will not defer or give any specific

6    evidentiary weight, including controlling weight, to any medical opinion(s) or prior

7    administrative medical finding(s), including those from your medical sources." 20 C.F.R.

8    §§ 404.1520c, 416.920c.

9        Furthermore, the ALJ will consider all medical opinions according to several

10    enumerated factors, including whether the opinion is supported by objective medical

11    evidence and whether the opinion is consistent with the evidence from other

12    sources. *Alonzo,* 2020 WL 1000024, at *3. Under the new regulations, the ALJ must

13    consider and explain how well the medical evidence supports the medical opinion and how

14    consistent the medical opinion is with the record, and may, but is not required to, explain

15    how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. §

16    404.1520c(b)(2). If the ALJ finds that two or more medical opinions are equally well-

17    supported, consistent with the record, but not the same, the ALJ must articulate how it

18    considered other persuasive factors. 20 C.F.R. § 404.1520c(b)(3).

19        "When the evidence before the ALJ is subject to more than one rational

20    interpretation, [the court] must defer to the ALJ's conclusion." *Batson,* 359 F.3d at 1198.

21    This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in

22    evidence, and if the evidence can support either outcome, the court may not substitute its

23    judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (citations omitted).

24        Considering the new regulations set by the Social Security Administration, each

25    medical opinion is on equal ground, regardless of the source. To find the ALJ made a

26    materially harmful error, this Court must find that the ALJ's reliance on the non-treating

27    physicians' medical assessments are not supported by and are inconsistent with the medical

28    evidence on record. This Court discerns no materially harmful error.

1     Substantial evidence supports the ALJ's determination that Plaintiff's mental
2 impairments were not severe. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)
3 (applying substantial evidence review to an ALJ's severity determination). The ALJ used
4 the standard set forth at 20 C.F.R. § 404.1520a(c)(3)–(4) when evaluating Plaintiff's mental
5 impairments. (AR 17–18). The ALJ determined that Plaintiff's limitations were mild in
6 understanding, remembering, or applying information; interacting with others;
7 concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR 18).
8 This finding is supported by the medical evidence on record. Dr. Celia Drake noted that
9 Plaintiff was alert, had logical and organized thought processes, related in a cooperative
10 and appropriate manner, and scored a 28 out of 30 on the Mini-Mental State Examination.
11 (AR 357). Furthermore, Dr. Joel Parker repeatedly found that Plaintiff had normal speech,
12 full memory, full orientation, logical thought processes, full concentration, and normal
13 judgement. (AR 386–94, 396–97, 399, 402–03, 556–57, 559–60, 563–67, 585–90, 827).

14     Additionally, the ALJ states the mental symptoms are a "reasonable response" to
15 Plaintiff's financial difficulties and that the medical evidence of record indicates normal
16 mental status examinations. (AR 18). These normal mental status examinations were
17 demonstrated by the record from both Dr. Drake and Dr. Parker. (AR 357, 386–94, 396–
18 97, 399, 402–03, 556–57, 559–60, 563–67, 585–90, 827). In addition, the Disability
19 Determination Service reviewing psychological consultant found the mental impairments
20 non-severe, which was affirmed on reconsideration. (AR 87, 107, 126, 145). The ALJ
21 found these opinions persuasive because they were consistent with the remaining record
22 which showed "essentially normal mental status examinations, with only occasion[al]
23 periods of increased symptoms due to financial difficulty," and the record supports this
24 finding. (AR 22, 357, 386–99, 402–03, 556–60, 563–67, 585–90, 827, 1069). The opinions
25 of the Disability Determination Service reviewing psychological consultant were also
26 consistent with the psychological consultative examiner's opinion.

27     Lastly, the ALJ determined specifically that Dr. Parker's opinion was not supported
28 by Dr. Parker's medical records, nor was it consistent with the medical evidence on record

which indicated normal mental status other than some increased symptoms. (AR 23). The medical evidence from both Dr. Drake's and Dr. Parker's mental status examinations support the ALJ's conclusion because most of the mental status examinations were normal. (AR 357, 386–94, 396–97, 399, 402–03, 556–57, 559–60, 563–67, 585–90, 827). Accordingly, this Court finds that the ALJ did not err by rejecting Dr. Parker's assessment in favor of the State agency experts' medical findings, and the findings were supported by and consistent with the medical record.

**IV.      CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 19th day of July, 2021.

James A. Teilborg
Senior United States District Judge